IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

PHILLIP LYNN CAPPS,

    Petitioner,                                  No. 2:06:cv-01431-MDS

vs.                                            <u>ORDER</u>

WARDEN GIURBINO,

    Respondent

_____/

        Phillip Lynn Capps (Petitioner) is proceeding *pro se* with an application for a writ of habeas corpus under 28 U.S.C. § 2254(a).  Pending before the court are Petitioner's "First Amended Petition," filed on June 26, 2006; Warden Giurbino's (Respondent's) "Answer to Amended Petition for Writ of Habeas Corpus," filed on November 8, 2006; and "Petitioner's Final Response," filed on December 13, 2006.  For the reasons discussed below, Petitioner's application for a writ of habeas corpus pursuant to § 2254(a) is denied.

1

# I

## A

Petitioner pleaded guilty to one count of being a felon in possession of a firearm, in violation of California Penal Code § 12021(a)(1). The state trial court found that Petitioner also had received two prior serious felony convictions within the meaning of the "Three Strikes" law as alleged in the special allegation. CAL. PENAL CODE § 667(b)-(i). After denying Petitioner's request to strike one of the prior convictions, the state trial court sentenced him to twenty-five years to life in prison.

## B

Petitioner timely filed a direct appeal from the state trial court's judgment and sentence in the California Court of Appeal for the Third District. After briefing by the parties, the California Court of Appeal affirmed the state trial court's judgment and sentence on April 2, 2004 in an unpublished opinion.

## C

Petitioner timely filed a petition for review of the California Court of Appeal's decision in the California Supreme Court. The California Supreme Court summarily denied review on June 16, 2004.

## D

Petitioner timely filed a petition for a writ of habeas corpus in the California Supreme Court. The court summarily denied the petition on April 26, 2006.

## E

Petitioner timely filed the pending amended petition for a writ of habeas corpus before this court on June 26, 2006. In its answer filed on November 8, 2006, Respondent concedes that Petitioner has properly exhausted the four state grounds for relief raised in the petition.

## II

The California Court of Appeal summarized the facts presented in the state trial court as follows in its unpublished decision in which it affirmed the judgment and sentence.

> On March 4, 2002, while investigating a report of criminal threats, two Trinity County Sheriff's deputies learned about a parole arrest warrant for [Petitioner]. There were also reports that [Petitioner] was staying with his wife in the Lewiston area or on the couple's mining claim in Junction City. [Petitioner]'s wife told the deputies that [Petitioner] might have three firearms with him. An aerial search spotted [Petitioner]'s car at the mining claim and several deputies responded on the ground. As they approached, [Petitioner] grabbed a rifle in his right hand and ran toward the Trinity River. He threw the rifle into the brush in response to the deputies' instructions, but continued his attempt to evade arrest. After the deputies caught [Petitioner], they found a 12-gauge shotgun, a .22-caliber revolver, numerous rounds of live ammunition, and several knives at his campsite.
>
> The information charged [Petitioner] with three counts of being a felon in possession of a firearm (§ 12021, subd. (a)(1))[1] and one count of misdemeanor obstructing a peace officer (§ 148, subd. (a)(1)). The special allegation included April 1986 convictions for forcible rape (§ 261, subd. (2)) and assault with a firearm (§ 245, subd. (a)(2)).
>
> On the day set for jury trial, [Petitioner] pleaded guilty to count one and admitted a prior conviction for violating section 245, subdivision (a)(2). The court considered evidence in support of the special allegation the following day. Defense counsel indicated a plan to address a *Romero* issue at sentencing. Thereafter, the court found true the allegation that the two prior convictions were serious felonies, and referred the matter to the probation department for a presentence report and recommendation.
>
> The probation report revealed a November 1985 conviction for vehicle theft (Veh.Code, § 10851) and exhibiting a loaded firearm (§ 417, subd. (b)), two 1991 misdemeanors for fighting and using offensive words in a public place (§ 415, subds.(2) & (3)), and a 1996 conviction for assault with a prior serious felony enhancement (§§ 245, subd. (a)(1) & 667, subd. (a)).
>
> At sentencing, defense counsel asked the court to exercise its discretion on its own motion to dismiss one of the prior strike allegations pursuant to section 1385. Counsel recounted [Petitioner]'s history of depression and substance abuse. He highlighted the fact [Petitioner] witnessed his father's suicide when he was 12 years old, and received a "less than honorable discharge" from military service as an army ranger. Counsel argued that the current offense was "nonviolent" and "not the most aggravated, in terms of the type of crime." He maintained that "the underlying crime itself . . . points in the direction of a bout with depression, substance abuse, and a stated intent to take his own life." In addition, counsel argued that the priors represented a single period of aberrant behavior related to alcohol binge drinking and drugs. The prosecutor responded that [Petitioner] was "a poster child for Three Strikes."
>
> The court evaluated the factors enumerated in *Romero* and *People v. Williams* (1998) 17 Cal.4th 148, and exercised its discretion not to strike the

---

[1] All undesignated statutory references pertain to the California Penal Code.

priors. It acknowledged [Petitioner]'s family history of "human tragedy that is all to [sic] common" to the extent relevant under *Romero* and *Williams*. The court continued: "The significance of the '96 proceeding . . . is that it could have been a three-strikes case in and of itself. . . . It just emphasizes to me that [Petitioner] has been before the court in '96 on a felony, having suffered the two strikes in '86, and while he was given a prison sentence in that case, he . . . did not suffer any strike consequences. That's not to say that, therefore, he should have strike consequences automatically now, but it greatly distinguishes this case from those in which there is a long period of time where a defendant is free from any violations, has not been exposed to the risk of three-strike sentencing, and then commits a light-weight felony." The court also rejected defense counsel's suggestion the current offense was "nonviolent" and "not the most aggravated." It explained that "[i]n terms of the nature of this felony, while on the surface a [section] 12021 is not per se violent, the facts of the case . . . certainly . . . depict a dangerous situation. The social policy of making it a felony offense for a felon to possess a firearm is really emphasized by the facts of this case. . . . These are weapons in the immediate possession of [Petitioner] for use offensively or defensively. Granted, there is some evidence that he was depressed and so forth, but that only makes it more dangerous, not less dangerous."

*People v. Capps*, No. C042093, 2004 WL 717165, at *1-2 (Cal. Ct. App. Apr. 2, 2004) (unpublished).

### III

In his application for a writ of habeas corpus, Petitioner argues that: (1) he suffered a violation of due process because the state trial judge should have recused himself and dismissed the Deputy District Attorney; (2) he received ineffective assistance of trial counsel; (3) he received ineffective assistance of appellate counsel; and (4) his sentence of twenty-five years to life in prison constitutes cruel and unusual punishment.[2]

---

[2] For the first time in his "Final Response," Petitioner also argues that his plea was involuntary because the State moved to amend the information to include a Three Strikes allegation after Petitioner pleaded guilty to one count of being a felon in possession of a firearm. Pet'r Final Res. 3-4 (Doc. 23). To properly exhaust a claim, a petitioner must afford the state the opportunity to rule on the merits of the claim by "fairly presenting" the claim to the state's highest court in a procedurally correct manner. *See, e.g.*, *Castille v. Peoples*, 489 U.S. 346, 351 (1989). Because Petitioner failed to do so here, federal habeas relief on that claim is barred unless he can show cause, actual prejudice, or a fundamental miscarriage of justice. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). To demonstrate cause, a petitioner must show the existence of some external factor which impeded his efforts to comply with the state's procedural rules. *See Martinez-Villareal v. Lewis*, 80 F.3d 1301, 1305 (9th Cir. 1996). Petitioner has failed to

Because Petitioner filed his application for a writ of habeas corpus after the effective date of the Antiterrorism and Death Penalty Act of 1996 (AEDPA), his application is subject to the procedures and standards provided therein. *See Lindh v. Murphy*, 521 U.S. 320, 326 (1997). In enacting AEDPA, Congress restricted the jurisdiction of federal courts in reviewing applications by state prisoners for relief from alleged violations of the United States Constitution. *See Williams v. Taylor*, 529 U.S. 362, 412 (2000) (O'Connor, J., concurring). Specifically, Congress decreed that:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
>> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>>
>> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.
>
> (e)(1) In a proceeding instituted by an application for a writ of habeas corpus by a person pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

28 U.S.C. § 2254(d)-(e)(1).

A decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams*, 529 U.S. at 412-13. A state court's application of clearly established federal law is

---

reference, nor can this court discern, any external impediment to raising his involuntary plea claim before the California Supreme Court, and this court need not examine the existence of prejudice absent a showing of cause. *See Engle v. Isaac*, 456 U.S. 107, 134 n.43 (1982) ("Since we conclude that . . . respondents lacked cause for their default, we do not consider whether they also suffered actual prejudice.").

"unreasonable" within the meaning of AEDPA when it correctly identifies the governing principle but applies it to the facts of the case in an objectively unreasonable manner. *Wiggins v. Smith*, 539 U.S. 510, 520 (2003). An unreasonable application may also occur if "the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Williams*, 529 U.S. at 407. Thus, before this court may grant habeas relief under the unreasonable application clause, the state court's application of clearly established federal law must be more than merely "incorrect or erroneous," it must be "'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (quoting *Williams*, 529 U.S. at 409)).

**A**

Petitioner's first three allegations arise from his argument that he suffered prejudice as a result of the state trial judge and the Deputy District Attorney attending a meeting where two individuals commented on Petitioner's potential sentence. Petitioner contends that the judge's failure to recuse himself and to dismiss the Deputy District Attorney constituted a violation of due process, that his trial counsel rendered ineffective assistance by failing to object to this alleged judicial and prosecutorial misconduct, and that his appellate counsel rendered ineffective assistance by failing to raise the issue on appeal. Because the California Supreme Court summarily denied these claims on the merits without providing any reasoning for its decision, this court must independently review the record to determine whether habeas relief is available under § 2254(d). *See Delgado v. Lewis*, 223 F.3d 976, 982 (9th Cir. 2000).

At the sentencing hearing, the state trial judge disclosed on the record that he had recently attended a meeting of the Trinity County Family Violence Council, the "special purpose" of which was to discuss a "local batterers treatment program provider" that could no longer render services in the community. Pet'r Final Resp., Ex. A at 21 (Doc. 23). Twelve to fourteen people attended the meeting, including the prosecutor in Petitioner's case. *Id.* During a ten- to fifteen-second time span, two other individuals unexpectedly mentioned Petitioner's case and appeared "pleased"

in their mistaken belief that Petitioner had already received a third-strike sentence of twenty-five years to life in prison. *Id.* at 22. The individuals did not direct their comments at the judge; rather, as the judge explained, the comments were "sort of chitchat between people at a large table, and . . . it was at the other end of the table from [him] . . . ." *Id.* at 23.

The judge stated at the sentencing hearing that:

> [what happened at the meeting] doesn't prejudice me, and I don't – I've examined my own mind in that regard. And it was unfortunate. People ought to know better than that, to say something with a judge present. I had no way of knowing that anybody would make that sort of reference to a specific case. It was out of place concerning the nature of the meeting and does not, in my opinion, affect my impartiality [in] this case.

*Id.* The judge then took a recess to allow Petitioner and his counsel to "consider what they ch[o]se to do about [the disclosure], if anything." *Id.* at 23-24. After talking with Petitioner, defense counsel stated that he was prepared to continue sentencing with the same judge. *Id.* at 24.

Under 28 U.S.C. § 455(a), a judge must "disqualify himself in any proceeding in which his impartiality might reasonably be questioned." *See also Shad v. Dean Witter Reynolds, Inc.*, 799 F.2d 525, 531 (9th Cir. 1986) (noting that "[l]itigants are entitled to a judge who is detached, fair, and impartial"). "The provisions of section 455(a) & (b)(1) require recusal only if the bias or prejudice is directed against a party and stems from an extrajudicial source." *United States v. Sibla*, 624 F.2d 864, 869 (9th Cir. 1980).

Here, Petitioner's "conclusory" allegations fail to provide a valid basis for the state trial judge's disqualification, as Petitioner points only to the bare fact that the judge overheard a brief comment regarding Petitioner's sentencing. *See id.* at 868. The judge specifically stated at the sentencing hearing that the comments did not "prejudice" him, nor did they "affect [his] impartiality [in] this case." Pet'r Final Resp., Ex. A at 23. Petitioner's counsel, after conferring with Petitioner, then agreed to proceed with the same judge. The judge's proper disclosure of the comments did not create reasonable grounds for questioning his impartiality.

In addition, Petitioner mis-characterizes the actions of the state trial judge and the

7

prosecutor as "misconduct." Pet'r First Am. Pet. 8 (Doc. 6).  First, because the purpose and anticipated content of the meeting had nothing to do with Petitioner's case, neither the judge nor the prosecutor reasonably could have known that other attendees would mention the case by coincidence.  Second, neither the judge nor the prosecutor themselves made any inappropriate comments, either to each other or to other attendees, regarding Petitioner's upcoming sentencing hearing.

Finally, Petitioner asserts that his trial counsel rendered ineffective assistance by failing to object to the alleged judicial and prosecutorial misconduct, and that his appellate counsel rendered ineffective assistance by failing to raise trial counsel's alleged error on appeal.  To prevail on an ineffective assistance of counsel claim, a petitioner must show that counsel's performance "fell below an objective standard of reasonableness," and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 687-88, 694 (1984).

As discussed above, however, Petitioner has failed to demonstrate that any judicial or prosecutorial misconduct occurred; as a result, trial counsel's failure to object on those grounds was not objectively unreasonable or prejudicial.  At the same time, "[i]n many instances, appellate counsel will fail to raise an issue because she foresees little or no likelihood of success on that issue; indeed, the weeding out of weaker issues is widely recognized as one of the hallmarks of effective appellate advocacy." *Miller v. Keeney*, 882 F.2d 1428, 1434 (9th Cir. 1989).  Accordingly, given the insufficient showing of misconduct, "appellate counsel's failure to raise [the] issue[] on direct appeal [did] not constitute ineffective assistance" because the issue "would not have provided grounds for reversal" in any event. *See Wildman v. Johnson*, 261 F.3d 832, 840 (9th Cir. 2001); *see also Boag v. Raines*, 769 F.2d 1341, 1344 (9th Cir. 1985) (noting that "[f]ailure to raise a meritless argument [on appeal] does not constitute ineffective assistance").  Petitioner has not shown that the state court's denial of these claims "was contrary to, or involved an unreasonable application of, clearly established Federal law." *See* 28 U.S.C. § 2254(d)(1).

8

**B**

Petitioner also argues that his sentence of twenty-five years to life in prison violates the Eighth Amendment of the United States Constitution due to the allegedly "non-violent" nature of his offense of being a felon in possession of a firearm. The Eighth Amendment provides that there "shall not be . . . cruel and unusual punishment inflicted." U.S. CONST. amend. VIII. This provision applies to the States through the Fourteenth Amendment. *Robinson v. California*, 370 U.S. 660, 675 (1962) (Douglas, J., concurring). The Supreme Court has held that the Eighth Amendment includes a "narrow proportionality principle" that applies to terms of imprisonment. *Harmelin v. Michigan,* 501 U.S. 957, 996 (1991) (Kennedy, J., concurring). The principle "does not require strict proportionality between crime and sentence"; rather, it "forbids only extreme sentences that are 'grossly disproportionate' to the crime." *Id.* at 1001 (quoting *Solem v. Helm*, 463 U.S. 277, 288 (1983)). As a result, "successful challenges to the proportionality of particular sentences [will be] exceedingly rare," and "[r]eviewing courts . . . should grant substantial deference to the broad authority that legislatures necessarily possess in determining the types and limits of punishments for crimes, as well as to the discretion that trial courts possess in sentencing convicted criminals." *Solem*, 463 U.S. at 289-90.

The Supreme Court has consistently held that imposition of a lengthy prison sentence on a repeat offender imposed under a recidivist statute does not amount to cruel and unusual punishment. *See, e.g.*, *Harmelin*, 501 U.S. 957; *Hutto v. Davis,* 454 U.S. 370 (1982); *Rummel v. Estelle,* 445 U.S. 263 (1980). In *Harmelin*, the Court upheld a life sentence without possibility for parole for a defendant convicted of possession of 672 grams of cocaine. 501 U.S. at 961, 996. In *Hutto*, the Court rejected an Eighth Amendment challenge to a forty-year prison term and a $20,000 fine for a defendant convicted of possession and distribution of nine ounces of marijuana. 454 U.S. at 371-72. And in *Rummel*, the Court held that it was not cruel and unusual punishment to impose a life sentence under a Texas recidivist statute where the defendant's conviction was for obtaining $120.75 by false pretenses. 445 U.S. at 266.

9

Additionally, in a more recent and factually similar case, *Ewing v. California*, the Court upheld a twenty-five-year-to-life sentence under the California Three Strikes law for a defendant with prior burglary and robbery convictions who shoplifted golf clubs worth about $1,200. 538 U.S. 11 (2003). And in a companion case, *Lockyer v. Andrade*, the Court upheld two consecutive twenty-five-year-to-life sentences under the Tree Strikes law for a defendant who stole $150 worth of videotapes with three prior convictions for first-degree burglary. 538 U.S. 63 (2003).

In this case, Petitioner pleaded guilty to one count of being a felon in possession of a firearm, in violation of California Penal Code § 12021(a)(1). Meanwhile, the special allegation included April 1986 convictions for forcible rape, in violation of California Penal Code § 261(2), and assault with a firearm, in violation of California Penal Code § 245(a)(2). These crimes are as, or more, serious than the burglary and robbery convictions in *Ewing* and *Andrade*. At the same time, being a felon in possession of a firearm is plainly not as "non-violent" as shoplifting sports equipment or stealing videotapes. Accordingly, Petitioner has failed to show that the state court's denial of his cruel and unusual punishment claim was objectively unreasonable. *See Wiggins*, 539 U.S. at 520.

### Conclusion

Petitioner has failed to show that the state court's denial of his federal constitutional claims "was contrary to, or involved an unreasonable application of, clearly established Federal law." *See* 28 U.S.C. § 2254(d)(1).

Accordingly, IT IS HEREBY ORDERED that

1. Petitioner's application for a writ of habeas corpus is DENIED.
2. The Clerk of Court is DIRECTED to enter judgment in favor of Respondent and close the case.

DATED: December 15, 2008

/s/ Milan D. Smith, Jr.
UNITED STATES CIRCUIT JUDGE
Sitting by Designation